**Embree Bullard v. John W. Green and others.**

A much stronger case must be made to set aside a sale under a decree in Chancery after confirmation of the report of sale than before.

On an application to set aside a sale in Chancery, the Court cannot inquire into the regularity of the foreclosure proceedings, or whether the decree is for a greater or less sum than it should have been.

The Court will not set aside a sale in Chancery on the ground of surprise, when the surprise complained of springs from the negligence and inattention of the party himself who complains of it.

A sale in Chancery at the price of $350 will not be set aside on the ground of inadequacy of consideration, where the petition states the premises to be worth $700, and the evidence is that they have since been sold by the purchaser at that price on long time, but that for cash they are not worth over $400.

Nor if the inadequacy of price was sufficient, would it be set aside on a petition presented six months after the sale, and which does not sufficiently excuse this delay.

*Submitted on briefs May 6th. Decided May 30th.*

Appeal in Chancery from Washtenaw Circuit.

*A. Felch* for appellee.

*O. Hawkins* for appellant.

MANNING J.:

This is an appeal from an order setting aside a sale of mortgaged premises and ordering a resale, after confirmation of the commissioner's report of sale. A much stronger case must be made to set aside a sale after confirmation of the report of sale than before. When the report of sale was confirmed does not appear from the papers before us; but it was most probably soon after

the sale, which took place on the fourteenth of January 1859. The petition on which the Court acted was sworn to, and the notice of its presentation to the Court is dated on the eighth of July 1859 — six months, within a few days, after the sale. And all the material facts stated in the petition must have been as well known to the petitioner or his attorney before the report of sale could have been confirmed, under the practice of the Court, as on the day the petition was sworn to. The material facts are, surprise; the petitioner's want of notice of the time the sale was to take place until the day before the sale; his inability to attend the sale on account of sickness, and the inadequacy of the price paid for the mortgaged premises by complainant, who was the purchaser. There are other matters stated foreign to the object of the petition, that cannot be looked into, however important they might have been in the foreclosure suit. On an application of this kind the Court cannot inquire into the regularity of the foreclosure proceedings, or whether the decree was for a greater or less sum than it should have been. They must be reached in a different way, as the decree closes the door against such inquiries on an application for a resale under it.

The surprise of the petitioner by the sale—if he was surprised—was a surprise of his own seeking, or more correctly speaking, a surprise occasioned by his own and his attorney's negligence in not attending to his business.

Petitioner had sold the mortgaged premises to one Hastings, subject to the mortgage; and Hastings afterwards sold them, also subject to the mortgage, to one Wilsey.

The surprise complained of would seem to be this: that at the commencement of the foreclosure proceedings petitioner was led to believe, from a conversation he had with complainant, that Hastings and Wilsey, or one of them, would take care of the mortgage, and that under

that impression he had omitted giving any attention to the matter, and did not know what had been done in the suit until the day preceding the sale, when he was too unwell to attend and bid off the mortgaged premises, or procure some one to purchase them at an amount sufficient to pay off the mortgage. Such a case is shadowed forth in the petition, but it is not sustained by the facts stated in the petition and accompanying affidavits.

Petitioner was not induced to pay no attention to the foreclosure by the conversation he had with complainant. He employed an attorney to attend to the suit; and his attorney, after a decree, and a sale of the mortgaged premises under it, had · both the decree and sale set aside. But neither attorney or client appear thereafter to have taken any further interest in the suit until we find the attorney, after another decree had been obtained and the mortgaged premises had again been advertised to be sold, writing a letter to his client informing him of. the day of sale, which the client received on the day before the sale was to take place. The employment of an attorney to attend to the foreclosure by petitioner shows he was not thrown off his guard by any thing complainant had said to him. And if the new decree and advertisement of sale under it is the surprise complained of, who is responsible for it except himself or attorney? Certainly not the complainant.

Was petitioner surprised that. Hastings & Wilsey had not taken care of the mortgage? As they had not done so on the first sale, what reason had he to suppose they would afterwards? There is no pretence of a promise from them to that effect. Hastings having sold the mortgaged premises to Wilsey, was no longer interested in the mortgage or land; and Wilsey was in California both when the bill was filed and at the time of sale.

The surprise stated in the petition, then, is the surprise of negligence and inattention, and must be cast aside as

forming no part of the petitioner's case, which is left to stand on petitioner's illness and the inadequacy of price at which the mortgaged premises were sold.

The petitioner says "if he had not been taken by surprise by said sale, he has no doubt he could have procured a purchaser at a sum equal to the whole indebtedness upon said decree, together with the costs." In this it is to be observed he makes no mention of his illness, but of his surprise, which we have already thrown out of the case, in wanting time to look up a purchaser. Had he stated it was his intention to attend the sale and bid off the premises, if they did not sell for enough to pay the decree and costs, but was prevented by illness; and that after the sale he had applied to complainant to consent to a resale on payment of costs, and on his refusal had taken steps to have the sale set aside before the report of the Commissioner was confirmed, his case would present a wholly different aspect from what it does.

As to inadequacy of price—standing alone and unsupported by other equities—a stronger case than the one before us, when the application is made in season, should be shown to warrant the interposition of the Court. The mortgaged premises were sold for $350. The petition states they were worth from six to seven hundred dollars, and had been sold by complainant to one Leek for that sum. Leek states that he purchased them at that price, payable in seven annual payments of $100 each with interest, but that they were not worth in cash over $400.

If the inadequacy of price was sufficient, the diligence and preliminary steps already indicated have not been taken by petitioner, and no sufficient excuse is given for the extraordinary delay of six months after the sale before the presentation of the petition.

The order for a resale must be vacated, and the Commissioner's report of sale be confirmed, with costs.

The other Justices concurred.